UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | No. 2:13-CR-00046-10-JRG-CRW |
| | ) | |
| TONY J. SNYDER | ) | |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant Tony Snyder's Motion for Modification of Conditions of Supervised Release [Doc. 906] and the United States's Response [Doc. 911]. In 2014, Mr. Snyder pleaded guilty to conspiring to manufacture fifty grams or more of methamphetamine, in violation 21 U.S.C. § 841(a)(1) and (b)(1)(A) and 21 U.S.C. § 846. [Plea Agreement, Doc. 275, at 1]. The Court sentenced him to 135 months' imprisonment and a five-year term of supervised release. [J., Doc. 534, at 2–3]. After completing his custodial sentence, Mr. Snyder violated his conditions of supervised release. [Pet. for Revocation, Doc. 843, at 1–8; Agreed Order, Doc. 863, at 1]. By agreement of the parties, the Court revoked Mr. Snyder's conditions of supervised release and sentenced him to ten months' imprisonment and a two-year term of supervision. [Agreed Order at 1].

As a special condition of his term of supervision, the Court ordered him to enroll in a twenty-eight-day inpatient substance-abuse program within thirty days of his release from incarceration. [*Id.* at 5]. Also, as a standard condition of supervised release, the Court ordered him to "live in a place approved by the probation officer," with the justification that "[t]his condition will assist the probation officer in monitoring the defendant for protection of the community." [*Id.* at 3]. Mr. Snyder, who has completed his ten-month sentence, now moves the Court to modify these two conditions of his supervision. In lieu of an inpatient substance-abuse

program, he asks the Court to allow him to participate an outpatient substance-abuse program. [Def.'s Mot. at 2]. He also requests that the Court allow him to live in Knoxville rather than move back to Mountain City—a request that his probation officer denied. [*Id.* at 2–3]. He states that he is currently living at a halfway house in Knoxville and works for Rubbermaid. [*Id.* at 2–3].

"The trial court, as it sees fit, may modify an individual's conditions of supervised release," *United States v. Johnson*, 529 U.S. 53, 60 (2000) (citing 18 U.S.C. § 3583(e)(2)), after considering the relevant factors under 18 U.S.C. § 3553(a), *see* 18 U.S.C. § 3583(e)(2) (granting district courts discretion to "modify, reduce, or enlarge the conditions of supervised release, at any time prior to the expiration or termination of the term of supervised release" but only "after considering "the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7)"). In addressing a motion for modification of conditions of supervised release, the Court "must demonstrate consideration of the relevant factors" under § 3553(a), "even if [it] does not describe its analysis of each factor." *United States v. Zai,* No. 22-3371, 2022 WL 17832201, at *6 (6th Cir. Dec. 21, 2022) (citations omitted).

A general statement that the Court has considered the relevant factors is sufficient. *Cf. United States v. Suber*, 75 F. App'x 442, 444 (6th Cir. 2003) (rejecting the contention that a district court, when denying a request for early termination, has to provide more than a general statement of its reasons under § 3553(a)'s factors); *cf. also United States v. Peters*, 856 F. App'x 230, 233, 234–35 (11th Cir. 2021) (recognizing that a "district court's order [denying early termination] must demonstrate that it considered the[] factors [under § 3553(a)], but it need not explain how each factor applies or explicitly state that it considered them," and then affirming the district court's denial of early termination because it had "consider[ed] . . . the relevant

2

§ 3553(a) factors" and "weighed each piece of evidence [the defendant] submitted in support of terminating his supervised release—including family letters"); *United States v. Lowe*, 632 F.3d 996, 998 (7th Cir. 2011) (stating that a district court need only "give some indication that it has considered the statutory factors in reviewing a motion for early termination of supervised release," rather than make explicit findings under those factors); *United States v. Gammarano*, 321 F.3d 311, 315–16 (2d Cir. 2003) ("[A] statement that [the district judge] has considered the statutory factors is sufficient." (quotation omitted)).

Neither the United States nor the United States Probation Office opposes Mr. Snyder's request to participate in an outpatient substance-abuse program. [United States's Resp. at 2]. Having considered the relevant factors under § 3553(a), the Court **GRANTS** Mr. Snyder's motion [Doc. 906] as to his request to participate in an outpatient substance-abuse program, and his first special condition of supervision is hereby **MODIFIED** so that he may enroll and participate in an outpatient substance-abuse program instead of an inpatient substance-abuse program. The first special condition of supervised release, as modified, now reads:

> The defendant shall participate in a program of testing and treatment for drug and/or alcohol abuse, as directed by the probation officer, until such time as the defendant is released from the program by the probation officer. Within thirty days of this Order's date, the defendant shall complete an outpatient substance-abuse treatment program, approved in advance by the United States Probation Office. The defendant shall participate in all aftercare as recommended by the treatment provider. **Justification:** *This condition will reduce the risk of recidivism and provide for defendant rehabilitation.*

Next, as to Mr. Snyder's request to modify his conditions of supervised release so that he can reside in Knoxville rather than in Mountain City, Mr. Snyder claims that he would be "more successful at his rehabilitation and reintegration into society" in Knoxville because of "increased employment opportunities available there." [Def.'s Mot. at 2]. In addition, he asserts that he could "continue to work at Rubbermaid" if the Court allows him to live in Knoxville.

[*Id.*]. Finally, in a letter to the Court, Mr. Snyder says that "Knoxville is a better fit for [him]" partly because it offers him "a fresh start in life." [Def.'s Letter, Doc. 906-1, at 2]. The United States and the United States Probation Office, however, oppose Mr. Snyder's request to live in Knoxville, noting that he has quit his job at Rubbermaid, has no ties to the Knoxville area, has no financial means to support himself in Knoxville, and has no stable housing in Knoxville. [United States's Resp. at 2]; *see* [Def.'s Letter at 2 (acknowledging that he "do[esn]'t know anyone" in Knoxville)].

The purpose of supervised release is to "assist convicted felons in their transition to community life," *United States v. Johnson*, 529 U.S. 53, 55 (2000), or in other words, "[t]he main goal of supervised release is 'to prevent recidivism and foster the offender's re-entry into society,'" *United States v. Fifer*, 863 F.3d 759, 769 (7th Cir. 2017) (quotation omitted). Mr. Snyder's current situation in Knoxville—jobless, impecunious, and alone—concerns the Court because it does not foster his reentry into society. Without a sense of community, a stable living situation, or a job, Mr. Snyder is more likely to resort to drug dealing as a means to support himself, and his criminal history, which consists of a criminal history category V—the second highest category—and numerous convictions for drug offenses, [PSR, Doc. 397, ¶¶ 40, 45, 46, 52, 53, 55], increase this likelihood, *see* U.S. Sent. Comm'n, *Recidivism Among Federal Offenders: A Comprehensive Overview* 5 (2016) ("A federal offender's criminal history was closely correlated with recidivism rates."), *available at* https:// www.ussc.gov/research/research-reports/recidivism-among-federal-offenderscomprehensive-overview.

Mr. Snyder has family on whom he can rely in Mountain City—his mother, father, and brother all live there, and he describes his relationship with his family as "good" and "close." [PSR ¶ 68]. In addition, his past employment experience as a blue-collar worker is arguably

4

better suited to a rural area like Mountain City than an urban area like Knoxville. [*Id.* ¶ 75]. In short, Mr. Snyder's familial and lifelong connections to Mountain City, where he was born and raised, create a system of support that Knoxville does not and a prospect of successful reentry into society that Knoxville does not, based on the facts before the Court. Having considered the relevant factors under § 3553(a), the Court therefore **DENIES** Mr. Snyder's motion [Doc. 906] as to his request for permission to live in Knoxville instead of Mountain City. The Court notes, however, that Mr. Snyder's term of supervision—two years—is not especially lengthy. Upon the successful completion of his term of supervision, he may relocate to Knoxville, or anywhere he likes, if he believes if it is in his best interests.

So ordered.

ENTER:

s/J. RONNIE GREER<br>UNITED STATES DISTRICT JUDGE